Good morning, counsel. Our first case for today is case number 417-0683-84 and 85. For the appellant, we have Mr. Costello, and for the athlete, we have Mr. Escalera. You may proceed, counsel. Thank you, Your Honor. May it please the Court, this is a consolidated appeal involving termination of parental rights. The state initially filed an adjudication of wardship based on the fact that the children were neglected and there was injury being caused to the minor's welfare. Also, drug use of both parents, the mother and the father, who subsequently died of a drug overdose. And the one child, I believe C.C., when he was born, there were controlled substances found in his blood, causing the department to take shelter for him. The respondent mother admitted the allegations of the petition and we went to adjudication. A service plan was entered in this case, actually more than one service plan, from February 18, 2016 to May 11, 2017. And the court, upon conclusion of that, entertained a petition to terminate the mother's rights, parental rights. The court found that there was no reasonable effort to follow the dictates and service plan. She did not comply with inpatient drug treatment. She did not comply with drug assessment. She did have two relapses of drugs during the period of the service plans. She was candid, at least with the caseworker on the list. She admitted her lapses and she missed many, many visits due to her incarceration later for drug, death by drug, homicide death by drug inducement of a, where she allegedly sold drugs. Which caused the death of the person taking them. That's still pending, Your Honor. The court found that the, used an objective standard for reasonable progress, which is the principle of law. And the reasonable effort that she made is subject to a subjective standard. The case law is that in this matter, where she's found unfit, it has to be against the manifest weight of the evidence. And that's what the mother is claiming. She did make, she did make progress in, during the service plans when she wasn't in jail. She did not permit anybody to use drugs at her home. She was open and honest. She made changes in her household. It was satisfactory. Mr. Costello, if I may. Yes. Prior to the petition being filed, wasn't there a safety plan in effect? Back in August of 15? Yes, I believe there was, Your Honor. And the basis of the safety plan was because she was pregnant and was testing positive for heroin, correct? That's correct. The basis of the filing of the petition was because of her drug use. Yes. She never took possession of the child, Your Honor. Throughout the course of the case, until termination, did she ever successfully complete any drug treatment at all? Outpatient, yes. On two occasions, I believe. Never inpatient, which was requested and required in the service plan. On two different occasions, she was told she should get inpatient. She never did. She never did. Did she complete the outpatient or did she simply get the assessment? Well, she was there three days and one night. I don't know what that means, Your Honor. It was more of drying out. That's correct. She dried out while she was incarcerated. And at the time of the filing of the petition for termination, the primary basis again was for continued drug use, correct? That's correct. And the child, of course the child had drugs in his system, the minor child. So if the primary basis for the case coming into care was continued drug use and that that drug use continued throughout the course of the case, how can it be against the manifest weight of the evidence when at the time of termination she has yet to have completed any drug treatment? Well, she claimed, Your Honor, that by her incarceration she didn't have an opportunity. She didn't complete it before her incarceration, but she claimed she was making some progress in the service plan. Was any of the progress related to her drug use at all? But for the two lapses, Your Honor, she did not show positive for drug use. Thank you. But two lapses. Mr. Costello, to follow up with what Justice DeArmond was asking you about, as you mentioned, we're looking at whether or not this is against the manifest weight of the evidence and to state it differently, whether the opposite conclusion is clearly apparent. How can we say that based on the evidence before this court that the trial court reached a conclusion where the opposite was clearly apparent in this matter? I can only suggest, Your Honor, that as she was making progress, as the service plans went along and she dried out, that she was doing a little better in the requests of DCFS. However, to be candid, she did not complete a mental health assessment that was demanded repeatedly. Were we ever at a point in this case where we could say it's likely that we will soon be able to return the children to mom's care? We suggest, Your Honor, that if given the opportunity, although incarcerated, by trying to complete the service plans and as she progressed from the initial start of this whole case, that she may well have progressed to a point where the children could be returned. But she never got close to that during the pendency of the case? No. She did, as she progressed, she continued to achieve satisfactory ratings on minor things. She provided background checks, changes in the household, those who lived there, minimum standards she met for parenting, she had minimum standards for supervisory skills. But she never did the two main things, substance assessment nor the mental health. She claimed she was not in need of a mental health assessment. That's the case in a nutshell. We just contend the only argument we can make to the court is that if allowed to progress, even though in facing trial and a death case, that she may well have reached a point where the children could be returned home safely. Thank you. Any questions? I don't see any. You'll have time on rebuttal if you so desire. Thank you. Mr. Escalera? May it please the court, counsel. Good morning, Your Honors. I am Rizario Escalera and I represent the Appellate Prosecutor's Office here in Springfield. Your Honors, the state alleged in its petition that the respondent was unfit for two reasons. The first allegation alleged the respondent was unfit because she failed to make reasonable progress. And the second allegation alleged the respondent was unfit because she failed to meet corrective conditions that were the basis for removing the children from her care. The allegations, as counsel alluded, cover the period from February 2016 to May 2017. The respondent was due the following major services. Get appropriate housing, get sufficient income, complete all recommended substance abuse treatment, complete negative drug screens, remain drug-free, and participate in mental health services. Here, Your Honors, the state proved by clear and convincing evidence that the respondent was unfit. The respondent admitted she did not complete the majority of her services and she admitted she went through detox twice. Now, the respondent argued she made reasonable progress when she went through detox, kept constant communication with her caseworker, signed release consents, completed a substance abuse assessment for being open and honest with the caseworker, and for keeping all appointments with CYFS. However, Your Honors, these minor accomplishments are trivial. Imagine if you would, Your Honors, you're building a sandwich and the sandwich represents the respondent's goals. Your Honors, the whole point of building a sandwich is to eat the meat of the sandwich. The respondent never built that sandwich. She never completed the main focus of her goals, which is to remain drug-free. It does not matter if the respondent completed these minor goals because she was required to remain drug-free. While the respondent did complete the assessment, the drug assessment, she was supposed to follow up on inpatient treatment and she never did that. Counsel, was there ever any evidence to suggest that even though she did not go to treatment that she was actually drug-free? Not that I know of, Your Honor. And I guess by going with that, I mean, when she went through detox, she went through detox the first time in October, from what I remember, and then she went to detox again back in December, so she had to release relapse back in that one time, which demonstrates her continued drug use. The goals the respondent completed in this case will not bring the children back to her care in the near future. While the respondent was incarcerated, as counsel alluded, the case law dictates NRAJL, reasonable progress is an objective standard, and time spent in prison counts towards the nine-month period. The respondent only completed being drug-free by being incarcerated. Now, regarding the second allegation of unfitness, reasonable efforts, the respondent only made an attempt at the end of her service goal and failed to remain drug-free. A person cannot make any efforts if they continue to use drugs. The respondent's efforts were too late. There were other goals the respondent was supposed to complete, and she did not complete those as well. If there are no further questions regarding the unfitness hearing, I would like to continue with the best interest hearing. The State must prove by promise of the evidence that it was in the best interest of the children that the respondent's parental rights be terminated. The State proved that goal. Here, all the children have done well in their respective homes. Two of the children are living with their grandmother, and the other child, Cece, I believe, is living with his great-aunt. Now, all the children have done well in their respective homes. They've been doing well. They've bonded well with their stuff, with their respective homes. Both of the foster homes said they would provide stability and permanency for the children. Conversely, the respondent has been charged with drug-induced homicide, which under the statute is at least a minimum of 15 years in prison. If she were found guilty, then there's no way the respondent would be able to have her children back in the care. Even if she wasn't found guilty, she still had to complete those goals. And after she gets to that point. Now, a respondent argues that the children are now split up among the homes, which is one of the factors. But that is refuted by the record. Both respective homes stated that they would allow the children to meet each other. And then, while there's no doubt that the respondent loves her children, the children should not have to wait for the respondent to get fit. Therefore, the trial court did not err, and the state asked this court to affirm the lower court. If there are no further questions. I don't see any at this time. Thank you. Thank you. Any rebuttal, Mr. Costello? All right. Thank you, counsel. We'll be in recess and take this matter under advisement.